**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) CHILD DOE, by his parents and next friends, JOHN and JANE DOE,  )<br><br>Plaintiff,  )<br><br>v.  )<br><br>(1) WASHINGTON PUBLIC SCHOOLS;  )<br>(2) A.J. BREWER, Superintendent, in his official and individual capacities; and  )<br>(3) STUART McPHERSON, Principal and Athletic Director, Washington Middle School, in his official and individual capacities,  )<br><br>Defendants.  ) | Case No: CIV-18-271-F<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Child Doe, by his parents and next friends, John and Jane Doe, and through his counsel, Denton Law Firm and Public Justice, states the following as his Complaint against Defendants Washington Public Schools, A.J. Brewer, and Stuart McPherson:

### INTRODUCTION

1.      This is a civil rights case brought by a student subjected to three sexual assaults by his male peers in an 18-month period, almost daily verbal harassment and bullying, and threats of physical harm and death in Washington Public Schools that went unchecked by officials with authority to stop it.

2.      Central to this case is the refusal of Superintendent A.J. Brewer and Washington Middle School Principal Stuart McPherson to recognize that forcible digital penetration of a student's rectum is sexual assault—regardless of whether the victim is male or female.

3.     Instead, Brewer and McPherson treated this conduct as normal "horseplay" between boys or, at worst, "accidental" touching. But it was not horseplay—or an accident—when one student restrained Child Doe while another shoved his fingers in Child Doe's rectum in front of a classroom full of students. And it was not horseplay or an accident when other students snuck up behind Child Doe in school locker rooms and shoved their fingers in his rectum, with one student saying "This will happen to you in high school; better get used to it!"

4.     Contrary to their obligations to prevent and address sexual harassment, Brewer and McPherson ignored, minimized, and dismissed it. As a result, they gave male students at Washington Middle School a free pass to continue—and escalate—their abuse of Child Doe. And they ignored Child Doe's report that he was not the only male student subjected to this kind of sexual abuse.

5.      Sexual harassment and bullying has been a relentless and inescapable aspect of Child Doe's life at Washington Middle School. The abuse, combined with the school district's failure to take any meaningful action to stop it, has derailed Child Doe's education and traumatized him emotionally and psychologically. His grades have dropped, he repeated a grade to avoid his tormentors, he lost his eligibility to play a sport he loves, and he has required mental health counseling to address the trauma he has suffered.

6.     The school district, Brewer, and McPherson acted with deliberate indifference to the sexual harassment and assaults suffered by Child Doe. Their practice of ignoring male-on-male sexual assault—and treating it as normal "horseplay"—is blatant sex discrimination. It is also evidence of the school district's failure to adequately train administrators and employees to recognize, prevent, and address sexual harassment and bullying; educate students about district

policies and procedures on harassment, intimidation, and bullying; and enforce those policies and procedures.

7.      This lawsuit alleges violations of Title IX of the Education Amendments of 1972 and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Child Doe seeks injunctive relief and damages to remedy these violations.

8.      In November of 2017, the Oklahoma State Bureau of Investigation began investigating allegations of student-on-student sexual assault in Washington Public Schools, including Child Doe's allegations.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1334 because the matters in controversy arise under the Constitution and the laws of the United States. Specifically, Plaintiff asserts claims under Title IX of the Education Amendments of 1972, 20 U.S.C § 1681 *et seq.*, and the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendants reside within this Court's judicial district and a substantial part of the events or omissions giving rise to the claims occurred within this district.

## PARTIES

11.     Plaintiff, Child Doe, is a 14-year-old male who resides with his parents, John and Jane Doe, in Washington, Oklahoma. Child Doe attends Washington Middle School, part of Washington Public Schools. Child Doe is suing Defendants through his next friends and parents, John and Jane Doe.

12.     Defendant Washington Public Schools ("WPS" or "District") is a public school district located in Washington, Oklahoma. Defendant Washington Public Schools is a recipient of federal financial assistance within the meaning of 20 U.S.C. § 1681(a) and a "person" within the meaning of 42 U.S.C. § 1983.

13.     Defendant A.J. Brewer ("Brewer"), sued in his official and individual capacities, was at all relevant times the Superintendent of Washington Public Schools. At all relevant times, Brewer was an agent and/or employee of Washington Public Schools, acting within the scope and course of his employment.

14.     Defendant Stuart McPherson ("McPherson"), sued in his official and individual capacities, was at all relevant times the Principal and Athletic Director of Washington Middle School. At all relevant times, McPherson was an agent and/or employee of Washington Public Schools, acting within the scope and course of his employment.

## APPLICABLE LAW AND POLICY

### *Title IX*

15.     Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

16.     Title IX is implemented through the Code of Federal Regulations. *See* 34 C.F.R. Part 106. 34 C.F.R. § 106.8(b) provides:

> . . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

17.     In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court held that a recipient of federal funds violates Title IX, and is subject to a private damages action, where the funding recipient is "deliberately indifferent" to known acts of teacher-on-student sexual harassment.

18.     In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme Court similarly recognized that federal fund recipients are subject to private damages actions under Title IX in cases of student-on-student sexual harassment.

19.     The Court in *Davis* held that a plaintiff in a student-on-student harassment case may prevail in a Title IX damages action against a school district where:

    a)  The school district is deliberately indifferent to known sexual harassment;

    b)  The harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victim of access to educational opportunities or benefits provided by the school; and

    c)  The school exercised substantial control over the harasser and the context in which the harassment occurred.

*Davis*, 526 U.S. at 645-46, 650.

### *Equal Protection Clause*

20.     The Fourteenth Amendment to the U.S. Constitution provides in relevant part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

21.     42 U.S.C. § 1983 creates a cause of action for damages and injunctive relief against any person who, under color of law, deprives any person of "rights, privileges, or immunities secured by the Constitution and laws," including the Equal Protection Clause.

22.     An individual school official violates the Equal Protection Clause and is subject to a claim under § 1983 where the official exhibits "deliberate indifference to known sexual harassment." *Murrell v. School District No. 1*, 186 F.3d 1238, 1250 (10th Cir. 1999).

23.     In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), the U.S. Supreme Court recognized that a municipality may be held liable for damages under § 1983.

24.     Applying *Monell*, the Tenth Circuit in *Murrell* explained that a school district may be liable for student-on-student sexual harassment under § 1983 when a school "employee's discriminatory actions are representative of an official policy or custom of the [school district], or are taken by an official with final policy making authority." 186 F.3d at 1249.

### *Oklahoma Anti-Bullying Law and District Policies*

25.     Oklahoma's School Safety and Anti-Bullying Act ("Anti-Bullying Act" or "Act") requires all public schools in the state to adopt a policy for investigating and responding to reports of bullying. OKLA. STAT. tit. 70, § 24-100.4 (2017).

26.     The Anti-Bullying Act defines "bullying" as "any pattern of harassment, intimidation, threatening behavior, physical acts, verbal or electronic communication directed toward a student or group of students that results in or is reasonably perceived as being done with the intent to cause negative educational or physical results for the targeted individual or group and is communicated in such a way as to disrupt or interfere with the school's educational mission or the education of any student." OKLA. STAT. tit. 70, § 24-100.3 (2017).

27.     WPS adopted the Act's definition of "bullying." Washington Board of Education Bullying Policy at 1 (Nov. 10, 2014).

28.     WPS's policies prohibiting harassment, intimidation, and bulling ("HIB Policy") also prohibits "sexual bullying." Sexual bullying includes "committing physical acts of a sexual nature at school, including fondling or touching of private parts of the victim's body," and states that such conduct "may also constitute sexual harassment" prohibited by the District. Washington Board of Education HIB Policy (Regulation) at 3 (Nov. 10, 2014).

29.     The District's Superintendent is responsible for enforcing the HIB Policy and developing procedures that provide for, among other things, prompt investigation of harassment allegations; expeditious correction of the conditions causing the harassment; initiation of appropriate corrective actions; and identification and enactment of methods to prevent recurrence of the harassment. Washington Board of Education Bullying Policy at 2 (Nov. 10, 2014); HIB Policy (Investigation Procedures) at 2 (Nov. 10, 2014).

## FACTUAL ALLEGATIONS

30.     On November 21, 2015, Child Doe moved with his parents, John and Jane Doe, to Washington, Oklahoma.

31.     Child Doe matriculated in WPS and began attending Washington Middle School as a sixth-grade student during the 2015-2016 academic year.

32.     Within weeks of his arrival at Washington Middle School, Child Doe was assaulted by another student.

### *Sexual Harassment and Bullying of Child Doe, and Defendants' Inadequate Response*

33.     On or about December 4, 2015, a male student at Washington Middle School who was a large football player, "Student #1," pushed Child Doe so hard into a vent cover at school that Child Doe had to be taken to a hospital to get his right elbow stitched up.

34.     An athletics coach was present when this incident occurred and prepared a written incident report.

35.     Upon information and belief, Student #1 was not disciplined for this incident.

36.     On or about February 18, 2016, Student #1 was involved in sexually assaulting Child Doe in front of a music class while the teacher was out of the room. Student #1 restrained Child Doe while another football player, Student #2, shoved his fingers in Child Doe's rectum, and a third football player, Student #3, stood nearby laughing. Approximately thirty (30) to forty (40) students witnessed this abuse.

37.     Child Doe and his parents, John and Jane Doe, reported this sexual assault to McPherson the day it happened.

38.     Shortly after he was sexually assaulted, Child Doe called his mother from school crying uncontrollably, told her what happened, and asked her to meet him at school. Jane Doe called Child Doe's father to tell him what happened, then John Doe left work and headed to Washington Middle School.

39.     Before his parents arrived, Child Doe went to McPherson's office to report the abuse. McPherson was at lunch, so Child Doe told the school secretary, Ms. Cox, what happened. One of Child Doe's teachers, Mrs. Castle, walked into the office and asked Child Doe what happened. Child Doe told her about the abuse too, explaining that Student #2 stuck his fingers in Child Doe's butt. She replied, "Oh my gosh!" and walked out of the office. By the time McPherson returned from lunch, Child Doe and his parents were there waiting. McPherson took them into his office and then Child Doe tearfully told McPherson about the abuse he experienced in music class.

40.     McPherson's response to the report was that the incident was normal "horseplay" among boys. John Doe disagreed, telling McPherson that anal penetration is not horseplay.

McPherson asked the Doe family to let him handle the matter and said the students involved in the incident would be required to write a letter of apology to Child Doe and his parents.

41.     Child Doe left school early with his parents after reporting the sexual assault. He continued to cry uncontrollably in the car. McPherson called while they were driving home, saying he needed to ask Child Doe a question about the incident. John Doe put McPherson on speaker phone so Child Doe could hear. McPherson starting asking Child Doe about the position he was in when restrained. McPherson then accused Child Doe of lying because Child Doe had described being restrained "like a baby," and McPherson had heard that Child Doe was held over a student's shoulder. John Doe then took McPherson off speaker phone and ended the interview, so that Child Doe would not be subjected to further anguish.

42.     The Doe family did not receive a letter of apology from any of the students involved in the incident.

43.     On information and belief, neither Student #1 nor Student #3 was disciplined for their roles in the incident.

44.     On information and belief, Student #2, who forced his fingers in Child Doe's rectum, was suspended for short period of time because of the incident.

45.     Soon after Student #2 was suspended, Student #2's friends began to verbally harass Child Doe on a daily basis, calling him "snitch" and "prison snitch." The harassment quickly spread among the sixth-grade students, many of whom began regularly calling Child Doe "snitch and "prison snitch."

46.     Throughout the rest of Child Doe's sixth-grade year, many students also regularly called him the kid who was "butt-fucked" or "raped."

47.     Nearly every day after Child Doe was sexually assaulted, students verbally harassed him about the sexual assault he suffered and the fact that he reported it to McPherson.

48.     On or about May 10, 2016, a student told Child Doe that the three students involved in sexually assaulting him were going to "jump" Child Doe and beat him up. John Doe reported this threat to McPherson, who said he would look into it.

49.     On information and belief, McPherson did not discipline any of the three students for their threats to harm Child Doe.

50.     On or about June 20, 2016, Child Doe received a threatening text message from Student #2, the same student who forced his fingers in Child Doe's rectum on February 18, 2016. Student #2 threatened Child Doe, saying "Fuck you, I am going to kill you."

51.     John Doe reported this threat to McPherson. John Doe also told McPherson that Child Doe had been experiencing constant bullying by his peers since arriving at Washington Middle School because of the school's failure to discipline the offending students.

52.     On information and belief, McPherson did not discipline Student #2 for threatening to kill Child Doe.

53.     Because of the sexual assault, the daily harassment and bullying that followed, and school administrators' failure to take meaningful action to address these issues during Child Doe's sixth-grade year, Child Doe dreaded returning to Washington Middle School for seventh grade.

54.     Child Doe's mother, Jane Doe, even asked McPherson several times to hold her son back and have him repeat sixth grade, so he could avoid his tormentors. Jane Doe made this request in April, May, and August of 2016. Each time, McPherson discouraged this, telling Jane Doe he would have to meet with all of Child Doe's teachers to make sure this was ideal for Child Doe. On

information and belief, McPherson never followed through and met with Child Doe's teachers about the possibility of holding him back in sixth grade.

55.     As Child Doe feared, the harassment escalated in seventh grade. In addition to facing a daily onslaught of verbal harassment by students who mocked him for being "butt-fucked" and "raped," and for being a "snitch" or "prison snitch," he was sexually assaulted two more times at school.

56.     In or about December of 2016 or January of 2017, Child Doe was anally penetrated by another male student-athlete, Student #4. Child Doe was changing in the locker room after basketball practice when Student #4 approached Child Doe from behind, shoved his fingers in Child Doe's rectum, and said: "This will happen to you in high school; better get used to it!"

57.     While Child Doe was being sexually assaulted by Student #4, he witnessed another male student in the basketball locker room being sexually assaulted in the same manner by yet another male student-athlete.

58.     Several months later, in the early spring of 2017, Child Doe was sexually assaulted for the third time at Washington Middle School. The third sexual assault occurred in another locker room at the school during baseball season and was perpetrated by yet another male student-athlete. Student #5 approached Child Doe while he was bent over in the locker room and digitally penetrated Child Doe's rectum. Child Doe responded by pushing Student #5 and telling the student not to do this again, but Student #5 laughed smugly and walked away, leaving Child Doe with the impression that Student #5 knew he would not be disciplined for the abuse.

59.     Demoralized by McPherson's failure to take meaningful action to address the sexual assault and harassment he and his family reported in sixth grade, and fearing retaliation by

students and McPherson, Child Doe did not immediately report the two sexual assaults he suffered in seventh grade.

60.     During the week of April 17, 2017, Student #2, the football player who had sexually assaulted Child Doe in music class the previous year, forcibly took a whiffle ball bat from Child Doe's hands during recess, then began hitting rocks with it into a school parking lot filled with cars. Some of the rocks hit cars, causing damage. McPherson summoned Child Doe to his office, blamed Child Doe for the incident because the bat was his, and said Child Doe's parents would have to pay for the broken glass. Upon information and belief, McPherson blamed Child Doe for the damage without questioning other students about the incident, including eyewitnesses who easily could have verified that Child Doe had not hit rocks into cars.

61.     Soon after the "bat incident," on or about April 21, 2017, Student #1, a friend of Student #2 and co-participant in the first sexual assault of Child Doe, threatened to harm Child Doe for saying "good morning" to Student #1's girlfriend. Student #1 told Child Doe that, if Child Doe ever spoke to Student #1's girlfriend again, he would "rip [Child Doe's] fucking head off and shove it down [Child Doe's] fucking throat."

62.     Soon after this threat, Child Doe asked his parents if he could be held back and repeat seventh grade. When John and Jane Doe asked why Child Doe wanted to be held back, he said he wanted to get away from the students who were bullying him. Child Doe then told his parents about the recent threat from Student #1. John Doe asked his son about reporting the incident to McPherson. But Child Doe said there was no point in telling McPherson because McPherson and students would hold it against him and find him at fault.

63.     Upset that his son was continuing to be threatened and bullied, and that McPherson was not taking any meaningful action to stop this, John Doe called Superintendent Brewer on or about April 26, 2017.

64.     During that telephone conversation, John Doe told Brewer that Child Doe had been bullied at Washington Middle School since the family moved to the community, and he wanted the bullying to stop. Brewer asked John Doe if he had shared his concerns with McPherson. John Doe said he had and that he was calling Brewer because he did not have confidence that McPherson would take care of the problem. Brewer then asked John Doe to share his concerns, so that Brewer could talk with McPherson and look into the matter. John Doe told Brewer about the sexual assault that occurred in sixth grade and the harassment and threats that Child Doe had been experiencing since then. (John Doe did not yet know about the two sexual assaults Child Doe had experienced in seventh grade.) Brewer said he would call John Doe on Monday, May 1, 2017, with an update.

65.     On or about May 1, 2017, John Doe called Brewer in the afternoon to follow up on their prior phone conversation. Coincidentally, McPherson was just outside Brewer's office when John Doe called. Brewer asked McPherson to step into his office and put John Doe on speakerphone, so that the three of them could talk. Brewer then asked John Doe to express his concerns.

66.     John Doe began to discuss the bullying that Child Doe was experiencing at school and said he wanted the bullying to stop. McPherson interrupted and said, "What do you want me to do, hold his hand?" John Doe responded "no," and said that he just wanted his son to feel safe at school. He then said he wanted to share a timeline of the incidents with Brewer and McPherson. McPherson interjected again, asking how he could fix things if he didn't know what happened.

John Doe said McPherson was aware of all but one incident on the timeline—the most recent threats by Student #1.

67.     John Doe expressed his view that Student #1 was continuing to bully Child Doe because Student #1 had never been disciplined for his role in sexually assaulting Child Doe in front of the music class. Both McPherson and Brewer refused to acknowledge that Child Doe had been sexually assaulted, and both referred to the incident as normal "horseplay" and "hazing" among boys. John Doe expressed his view that McPherson and Brewer would take the incident more seriously if a student had put his fingers in a girl's rectum. McPherson's responded that he didn't know if Child Doe had been "penetrated" because he was wearing gym shorts when the incident occurred. The conversation became more heated after this comment. John Doe pressed McPherson and Brewer to address what they would do if a student stuck his fingers in a girl's rectum, and both administrators said they would call the police. John Doe said it should not make a difference if the victim is a boy or girl, because it is an unwanted touch and constitutes "rape." McPherson eventually said he wanted to ask Child Doe more questions. John Doe said McPherson could not talk with his son unless John Doe was present and that he would leave work and come to Brewer's office right away.

68.     When John Doe arrived at Brewer's office, he introduced himself to Brewer. Brewer asked if John Doe was okay. John Doe said he was not okay. He explained that McPherson's comments during their telephone conference were unacceptable. John Doe also said that it was no wonder that Child Doe didn't feel like he could share his concerns with McPherson.

69.     Soon after John Doe arrived at Brewer's office, McPherson arrived with Child Doe. John Doe then asked his son to share everything with Brewer and McPherson, so they could fix the problem.

70.     Child Doe began by sharing information about inappropriate sexual conduct at Washington Middle School generally. He said that students sometimes watched porn in class. McPherson said that was not possible because students did not know the school's WiFi password. John Doe asked his son to share the password, if he knew it. Child Doe then recited the school's WiFi password. Child Doe also told Brewer and McPherson that students sent "dirty pictures" to one another at school.

71.     During the May 1, 2017, meeting, Child Doe also told Brewer and McPherson about Student #1's recent threat to "rip [his" fucking head off." McPherson suggested that Child Doe had instigated the incident by saying "good morning" to Student #1's girlfriend.

72.     Child Doe also told Brewer and McPherson that students frequently bully him over the sexual assault that occurred in the music room in sixth grade.

73.     During the May 1, 2017, meeting, John Doe raised the recent "bat incident" and said that he thought Student #3 should pay for the damage done to parked cars because Student #3 had taken Child Doe's bat and used it to hit rocks into the cars. He also mentioned a well-known incident where Child Doe and others witnessed a male student-athlete masturbate on a "basketball bus," and questioned why there were no consequences for this inappropriate sexual behavior.

74.     Brewer and McPherson asked Child Doe if he had anything else to share with them. Child Doe then told Brewer, McPherson, and his father that students had stuck their fingers in his rectum more than once at school and that it had happened two (2) more times during the 2016-2017 academic year. He also told them that three different students had stuck their fingers in his rectum.

75.     Child Doe then provided details on the incidents where a male student-athlete shoved his fingers in Child Doe's rectum in the basketball locker room and another male student-

athlete did the same thing in another school locker room during baseball season. Child Doe also provided details on witnessing another student experience the same abuse in the basketball locker room, while Child Doe was being sexually assaulted.

76.     McPherson asked Child Doe to provide the names of all students involved in these incidents and who could verify these incidents. Child Doe complied with this request.

77.     When Child Doe revealed the name of the student whom he had witnessed digitally penetrating another student's rectum in the basketball locker room, McPherson was incredulous. He said that could not be true because the student was a good kid and his mother was a teacher.

78.     Child Doe assured McPherson that the student did as he said, just as other students had done the same thing to him. Child Doe also explained that he was late getting changed after basketball practices because he would wait until the offending students left the locker room. Child Doe said those boys would engage in this abuse any time they had an opening, so he would use both hands to hold himself in a seated position on a bench and wait to change until after the boys left the locker room.

79.     McPherson and Brewer asked Child Doe if the students stuck their fingers in Child Doe's body by accident or on purpose. This question was demoralizing to Child Doe, but he assured them it was intentional.

80.     During the May, 1, 2017, meeting, Brewer said that Child Doe could resolve the problems he was experiencing by taking matters into his own hands and using his baseball bat to defend himself against his tormentors. This was not an acceptable solution to Child Doe or his father.

81.     Toward the end of the meeting, Brewer told Child Doe and his father that McPherson would conduct an investigation into the allegations Child Doe made about the two incidents in school locker rooms.

82.     On or about May 5, 2017, Washington Middle School's School Resource Officer ("SRO") informed John Doe that the school was investigating the incidents reported by Child Doe as "accidental" touches. John Doe found this news very upsetting. He told the SRO that Child Doe was not touched "accidentally" and provided details on the sexual assaults and harassment his son had experienced at school.

83.     On or about May 8, 2017, John Doe received a call from the SRO asking why the school was receiving anonymous calls from a woman saying she would report what happened to Child Doe to the police. John Doe told the SRO he did not know who was making the calls. The SRO told John Doe that if he did not stop the calls from happening, the town and media might uncover Child Doe's identity—something John Doe had told the SRO he was trying to avoid.

84.     On or about May 9, 2017, Brewer called John Doe to inform him of the results of the investigation. Brewer told John Doe that McPherson interviewed the students Child Doe had named and could not verify Child Doe's allegations. Brewer said that without any witnesses to verify the allegations, there was nothing the school district could do.

85.     On information and belief, McPherson investigated Child Doe's reports of sexual assaults in school locker rooms by interviewing all of the students Child Doe had identified (approximately nine to ten students) together and prefacing the group interview by stating that their responses to his questions could affect their future athletic careers.

86.     On information and belief, McPherson's method of conducting the interviews had the intended effect of silencing the boys.

87.     Because Brewer had informed John Doe that there was nothing the District could do in response to his son's reports, Child Doe's mother asked McPherson if Child Doe could be held back and repeat seventh grade. Jane Doe made this request near the end of the 2016-17 academic year. This time, McPherson approved the request and did not say anything about needing to discuss it with Child Doe's teachers first.

88.     Child Doe was academically qualified to advance to eighth grade, but preferred to repeat seventh grade so that he would feel safer at school.

89.     Now that Child Doe is no longer in the same grade as his main tormentors, he has not experienced another sexual assault this academic year. He does, however, continue to experience verbal harassment referring to the sexual assaults, but with less frequency.

90.      Since the initial sexual assault Child Doe suffered in his sixth grade music class, the sexual and verbal abuse Child Doe experienced at Washington Middle School was well known among students and school employees. One female student even told Child Doe that she was afraid that, if she spoke to him at school, she might suffer the same abuse that he had experienced.

91.     At no time after either of Child Doe's reports of sexual assault did any WPS employee inform Child Doe or his parents of Child Doe's rights under Title IX. For example, no WPS employee informed Child Doe or his parents of Child Doe's right to report the sexual assaults and have them investigated; receive accommodations during and after the investigation to ensure that he could continue his education in a safe environment; and be free from retaliation for reporting the sexual assaults.

92.     On information and belief, neither Washington Middle School nor the District had a Title IX Coordinator during the two academic years when Child Doe reported that he was sexually assaulted.

93.     At no time after either of Child Doe's reports of sexual assault did any WPS employee inform Child Doe or his parents that Washington Middle School or the District had a Title IX Coordinator or that they could speak with a Title IX Coordinator about Child Doe's allegations of sexual assault and harassment.

94.     On information and belief, none of the Defendants treated Child Doe's allegations of forced digital penetration of his rectum as reports of sexual assault or "sexual bullying," as defined in the District's HIB Policy.

95.     At no time after either of Child Doe's reports of sexual assault did any WPS employee talk with Child Doe or his parents about completing a Harassment/Bullying Incident Report Form pursuant to the District's HIB Policy. Nor did any WPS employee discuss with Child Doe or his parents the District's procedures for investigating reported incidents of harassment, intimidation, and bullying or threatening behavior.

96.     In May of 2017, the Washington Police Department contacted the Doe family after receiving a letter from Oklahoma's Department of Human Services  ("DHS") describing an anonymous call made to a DHS office in a neighboring county about the sexual abuse Child Doe had experienced at school. The Washington Police Department asked the Doe family to file a report about the abuse and come in for questioning, and the Doe family complied with these requests.

97.     In November of 2017, at the request of the Washington Police Department, the Oklahoma State Bureau of Investigation began investigating allegations of student-on-student sexual assault in WPS, including Child Doe's allegations.

*Impact of Unchecked Harassment and Bullying on Child Doe*

98.     The Defendants' failure to take meaningful action to address the sexual assaults, harassment, and bullying Child Doe experienced at Washington Middle School deprived him of educational opportunities. Among other things, Child Doe's grades dropped and he is repeating seventh grade to avoid his main tormentors. In addition, because he was held back a year, Child Doe became ineligible to play football, his favorite sport, during the 2017-2018 academic year. Child Doe also stopped playing basketball and is unsure whether he will play baseball because of concerns about being sexually abused again in the school's locker rooms.

99.     The sexual assaults, harassment, and bullying that Child Doe has experienced at Washington Middle School, and the Defendants' failure to take meaningful action to address this, has traumatized Child Doe psychologically and emotionally.

100.    Child Doe is being treated by therapists and counselors to address the trauma he has suffered at Washington Middle School.

101.    Mental health professionals have diagnosed Child Doe with depression, social anxiety disorder, post-traumatic stress disorder, and institutional betrayal. They have concluded that Child Doe is suffering the effects of trauma from being sexually assaulted by his peers and from school officials' inadequate response to the reported abuse and harassment.

102.    "Institutional betrayal" or "betrayal trauma" occurs specifically when an institution, such as a school, fails to prevent or respond supportively to wrongdoing perpetrated on an individual within the context of an institution.

103.    John and Jane Doe, and the mental health professionals treating Child Doe, believe that Child Doe will continue to require counseling and therapy for the foreseeable future.

104.    Child Doe may also require additional special education services to accommodate the emotional and mental health conditions he has as a result of the peer abuse and school officials' failure to support him.

## COUNT I
### Violation of Title IX
### 20 U.S.C. § 1681 *et seq.*
### (Against Washington Public Schools)

105.    Plaintiff incorporates by reference all preceding paragraphs as if fully stated here.

106.    WPS had actual knowledge that Child Doe experienced sexual assaults and harassment at Washington Middle School based on, *inter alia*, Child Doe and his parents' reports to Brewer and McPherson.

107.    WPS was obligated to address these reports because student-on-student sexual assault and harassment are forms of sex discrimination prohibited by Title IX.

108.    WPS was also obligated to address these reports under Title IX because WPS had control over the students who sexually assaulted and harassed Child Doe, as well as the context in which the assaults and harassment occurred—namely, at Washington Middle School.

109.    The individuals with actual knowledge, including Defendants Brewer and McPherson, had the authority and ability to investigate and take meaningful corrective action to end or prevent sexual assaults and harassment of Child Doe, but failed to do so.

110.    WPS, through Brewer and/or McPherson, was also obligated to address these reports under its HIB Policy, which, *inter alia*, required WPS to "notify local law enforcement and request that the alleged victim also contact law enforcement to report the matter for potential criminal investigation" if it appeared "that a crime may have been committed." WPS failed to do this.

111.    The sexual assaults and harassment that multiple students inflicted on Child Doe were severe, pervasive, and objectively offensive, and effectively deprived Child Doe of access to educational opportunities and benefits provided by Washington Middle School.

112.    The sexual assaults and harassment Child Doe suffered created a hostile educational environment at Washington Middle School based on Child Doe's sex.

113.    WPS, by its acts and omissions, created a hostile educational climate where male-on-male student sexual assaults and harassment were tolerated, which encouraged repeated sexual harassment and proximately caused injuries to Child Doe.

114.    By its acts and omissions, WPS, through Brewer and McPherson, was deliberately indifferent to Child Doe's reports of sexual assault and harassment, as well as the sexually hostile education environment in which Child Doe suffered because of the District's failure to take meaningful corrective action. The District's deliberate indifference included, without limitation:

   a.   Refusing to treat Child Doe's reports of forcible digital penetration of his rectum by male students as reports of sexual assault;

   b.   Characterizing the sexual assaults Child Doe reported as normal "horseplay" among boys;

   c.   Refusing to investigate Child Doe's reports of sexual assault, instead investigating them as "accidental" or "incidental" touchings;

   d.   Acknowledging that it would treat reports of this type of conduct differently and would have called the police if the victim had been a female student;

   e.   Creating a hostile educational climate that tolerates male-on-male student sexual assault, harassment, retaliation and threats of bodily harm;

f.  Prioritizing the athletic careers of the accused male students over Child Doe's safety and education, and over its obligation to conduct an appropriate investigation into Child Doe's reports of sexual assault, harassment, retaliation, and threats of bodily harm;

g.  Blaming Child Doe for some of the sexual harassment he was experiencing;

h.  Telling Child Doe he could resolve the harassment by physically defending himself with a bat;

i.  Deciding not to investigate or discipline students who subjected Child Doe to severe and pervasive verbal harassment for being sexually assaulted and reporting it;

j.  Failing to appropriately discipline the students involved in sexually assaulting Child Doe;

k.  Failing to follow through on even the most minimal consequence promised to Child Doe and his father in response to the first reported sexual assault—namely, written apologies from the students involved;

l.  Failing to offer, provide, recommend, or coordinate psychological, counseling, and academic assistance and services to Child Doe after he reported the sexual assaults, harassment, retaliation, and threats;

m.  Failing to take meaningful action to correct the conditions causing the sexual harassment and to prevent recurrence of the harassment;

n.  Failing to report suspected sexual assault in violation of, and as mandated by, the HIB Policy;

o.  Failing to provide adequate training for its administrators and employees on sexual harassment and assault, retaliation, and mandatory reporting;

p.  Failing to inform Child Doe or his parents of Child Doe's rights under Title IX or to direct Child Doe to a Title IX coordinator; and

q.  Failing to appoint or employ a Title IX coordinator.

115.   As a direct and proximate result of Defendant WPS's violation of Child Doe's rights under Title IX, Child Doe has suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages and losses, including, but not limited to: emotional distress, fear, anxiety and trauma; lost future earnings and earning capacity; and expenses for past and future medical and psychological care.

   **WHEREFORE**, Plaintiff respectfully demands judgment against Defendant Washington Public Schools awarding:

(a)   Compensatory damages in amounts to be established at trial, including, without limitation, payment of Plaintiff's expenses incurred as a consequence of the sexual assaults, harassment, retaliation and threats, and WPS's failure to take meaningful corrective action; damages for deprivation of equal access to the educational opportunities and benefits provided by WPS; and damages for past, present and future emotional pain and suffering, ongoing mental anguish, loss of past, present and future enjoyment of life, and loss of future earnings and earning capacity;

(b)   Injunctive relief to be determined at trial requiring WPS to comply with Title IX;

(c)   Pre- and post-judgment interest;

(d)   Costs;

(e)      Attorneys' fees pursuant to 42 U.S.C. § 1988(b); and

(f)      Such other and further relief as the Court may deem just and proper.

**COUNT II**
**Violation of Equal Protection, U.S. Constitution Fourteenth Amendment**
**42 U.S.C. § 1983**
**(Against Brewer and McPherson)**

116.      Plaintiff incorporates by reference all preceding paragraphs as if fully stated here.

117.      Under the Fourteenth Amendment to the U.S. Constitution, Child Doe has the right as a public school student to equal protection of the laws.

118.      Under the Equal Protection Clause of the Fourteenth Amendment, Child Doe has the right to equal access to an educational environment free from harassment and discrimination on the basis of sex.

119.      Defendants Brewer and McPherson were at all relevant times state actors acting under color of state law.

120.      Under the Equal Protection Clause of the Fourteenth Amendment, Brewer and McPherson were obligated to address known student-on-student sexual harassment, including sexual assault.

121.      Brewer and McPherson had actual knowledge that Child Doe experienced sexual assaults and harassment at Washington Middle School based on, *inter alia*, Child Doe and his parents' reports to Brewer and McPherson.

122.      Brewer and McPherson also had actual knowledge that Child Doe was not the only male student subjected to sexual assault and harassment by other male students, based on, *inter alia*, Child Doe's report to Brewer and McPherson that he witnessed another student being subjected to this abuse.

123.    Brewer and McPherson, by their acts and omissions, created a hostile educational climate where male-on-male student sexual assaults and harassment were consciously tolerated, which encouraged repeated sexual harassment and proximately caused injuries to Child Doe.

124.    Brewer and McPherson violated Child Doe's right to equal protection of the laws on the basis of his sex by acting with deliberate indifference to Child Doe's reports of sexual assault and harassment, as well as to the sexually hostile education environment in which Child Doe suffered because of their failure to take meaningful corrective action. Brewer and McPherson's deliberate indifference included, without limitation:

    a.  Refusing to treat Child Doe's reports of forcible digital penetration of his rectum by male students as reports of sexual assault;

    b.  Characterizing the sexual assaults Child Doe reported as normal "horseplay" among boys;

    c.  Refusing to investigate Child Doe's reports of sexual assault, instead investigating them as "accidental" or "incidental" touchings;

    d.  Acknowledging that they would treat reports of this type of conduct differently and would have called the police if the victim had been a female student;

    e.  Creating a hostile educational climate that tolerates male-on-male student sexual assault, harassment, retaliation and threats of bodily harm;

    f.  Prioritizing the athletic careers of the accused male students over Child Doe's safety and education, and over their obligation to conduct an appropriate investigation into Child Doe's reports of sexual assault, harassment, retaliation, and threats of bodily harm;

    g.  Blaming Child Doe for some of the sexual harassment he was experiencing;

h.  Brewer's telling Child Doe he could resolve the harassment by physically defending himself with a bat;

i.  Deciding not to investigate or discipline students who subjected Child Doe to severe and pervasive verbal harassment for being sexually assaulted and reporting it;

j.  Failing to appropriately discipline the students involved in sexually assaulting Child Doe;

k.  McPherson's failing to follow through on even the most minimal consequence promised to Child Doe and his father in response to the first reported sexual assault—namely, written apologies from the students involved;

l.  Failing to offer, provide, recommend, or coordinate psychological, counseling, and academic assistance and services to Child Doe after he reported the sexual assaults, harassment, retaliation, and threats;

m.  Failing to take meaningful action to correct the conditions causing the sexual harassment and to prevent recurrence of the harassment;

n.  Failing to report suspected sexual assault in violation of, and as mandated by, the HIB Policy;

o.  Failing to provide adequate training for administrators and employees on sexual harassment and assault, retaliation, and mandatory reporting;

p.  Failing to follow and enforce the District's HIB Policy on "sexual bullying" and other forms of harassment, intimidation and bullying when the perpetrators and victims were male students;

q.  Failing to follow and enforce the District's prohibition of sexual harassment when the perpetrators and victims were male students;

r.  Failing to inform Child Doe or his parents of Child Doe's rights under Title IX or to direct Child Doe to a Title IX coordinator; and

s.  Failing to appoint or employ a Title IX coordinator.

125.   As a direct and proximate result of Brewer and McPherson's violation of Child Doe's equal protection rights under the Fourteenth Amendment, Child Doe has suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages and losses, including, but not limited to: emotional distress, fear, anxiety and trauma; lost future earnings and earning capacity; and expenses for past and future medical and psychological care.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendants A.J. Brewer and Stuart McPherson awarding:

(a)  Compensatory damages in amounts to be established at trial, including, without limitation, payment of Plaintiff's expenses incurred as a consequence of the sexual assaults, harassment, retaliation and threats, and Brewer and McPherson's failure to take meaningful corrective action; damages for deprivation of equal access to the educational opportunities and benefits provided by WPS; and damages for past, present and future emotional pain and suffering, ongoing mental anguish, loss of past, present and future enjoyment of life, and loss of future earnings and earning capacity;

(b)  Punitive damages;

(c)  Injunctive relief to be determined at trial requiring Brewer and McPherson to comply with the Fourteenth Amendment's Equal Protection Clause;

(d)      Pre- and post-judgment interest;

(e)      Costs;

(f)      Attorneys' fees pursuant to 42 U.S.C. § 1988(b); and

(g)      Such other and further relief as the Court may deem just and proper.

## COUNT III

**Violation of Equal Protection, U.S. Constitution Fourteenth Amendment
42 U.S.C. § 1983
(Against Washington Public Schools)**

126.     Plaintiff incorporates by reference all preceding paragraphs as if fully stated here.

127.     At all relevant times, WPS had unconstitutional customs or policies of (a) failing to appropriately investigate and respond to reports of male-on-male student sexual harassment, including sexual assault; (b) failing to enforce its policies prohibiting sexual bullying and harassment when the perpetrators and victims are male students; and (c) failing to adequately train District administrators and employees on how to recognize, address, and prevent sexual harassment of its students.

128.     The District followed these unconstitutional customs and policies not only with regard to Child Doe, but also with regard to the sexual harassment of other male students at Washington Middle School.

129.     The District's unconstitutional customs or policies constituted disparate treatment of male students and had a disparate impact on male students.

130.     At all relevant times, Defendants Brewer and McPherson were policymakers who implemented and enforced the District's unconstitutional customs or policies.

131.     At all relevant times, Defendant Brewer had final policymaking authority regarding the District's HIB Policy, including, but not limited to, its policy prohibiting sexual bullying.

132.    At all relevant times, Defendant Brewer was responsible for enforcing the District's HIB Policy and developing procedures to provide for, among other things, prompt investigation of harassment allegations; expeditious correction of the conditions causing the harassment; initiation of appropriate corrective actions; and identification and enactment of methods to prevent recurrence of the harassment.

133.    At all relevant times, Brewer and McPherson violated the District's HIB Policy in response to Child Doe and his parents' reports of sexual harassment and bullying.

134.    At all relevant times, Brewer and McPherson acted with deliberate indifference to reports of male-on-male student sexual harassment and bullying, including Child Doe's reports.

135.    The customs and policies of the District, Brewer, and McPherson for responding to reports of male-on-male student sexual harassment and bullying, including Child Doe's reports, were so clearly inadequate that they give rise to a reasonable inference that the Defendants consciously acquiesced in the harassment and bullying.

136.    The failure of the District, Brewer, and McPherson to respond appropriately to reports of male-on-male student sexual harassment and bullying caused Child Doe to be subjected to repeated sexual harassment and bullying, including sexual assaults.

137.    The District's failure to adequately train Brewer, McPherson, and other District employees on how to recognize, address, and prevent sexual harassment of its students caused Child Doe to be subjected to repeated sexual harassment and bullying, including sexual assaults.

138.    If the District's training had been adequate, Brewer and McPherson would have, inter alia, (a) recognized that Child Doe's reports of forcible digital penetration of his rectum by male students were reports of sexual assault; (b) investigated Child Doe's reports as sexual assaults, rather than as "accidental" or "incidental" touchings; (c) notified local law enforcement

for potential criminal investigation; and (d) taken meaningful corrective action to prevent future recurrences and to permit Child Doe to continue his education in a safe environment.

139.    As a direct and proximate result of the Defendants' violation of Child Doe's equal protection rights under the Fourteenth Amendment, Child Doe has suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages and losses, including, but not limited to: emotional distress, fear, anxiety and trauma; lost future earnings and earning capacity; and expenses for past and future medical and psychological care.

**WHERFORE**, Plaintiff respectfully demands judgment against Defendant Washington Public Schools awarding:

(a)    Compensatory damages in amounts to be established at trial, including, without limitation, payment of Plaintiff's expenses incurred as a consequence of the sexual assaults, harassment, retaliation and threats, and Brewer and McPherson's failure to take meaningful corrective action; damages for deprivation of equal access to the educational opportunities and benefits provided by WPS; and damages for past, present and future emotional pain and suffering, ongoing mental anguish, loss of past, present and future enjoyment of life, and loss of future earnings and earning capacity;

(b)    Injunctive relief to be determined at trial requiring Washington Public Schools to comply with the Fourteenth Amendment's Equal Protection Clause;

(c)    Pre- and post-judgment interest;

(d)    Costs;

(e)    Attorneys' fees pursuant to 42 U.S.C. § 1988(b); and

(f)    Such other and further relief as the Court may deem just and proper.

Respectfully submitted,


_s/ Nathan D. Richter_
Nathan D. Richter, OBA # 22003
DENTON LAW FIRM
925 West State Highway 152
Mustang, Oklahoma 73064
Telephone: (405) 376-2212
Facsimile: (405) 376-2262
nathan@dentonlawfirm.com


_s/ Adele P. Kimmel_
Adele P. Kimmel
(_pro hac vice application pending_)
PUBLIC JUSTICE, P.C.
1620 L Street, NW
Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
Facsimile: (202) 232-7203
akimmel@publicjustice.net

ATTORNEYS FOR PLAINTIFF